# United States Court of Appeals
## For the First Circuit

No. 07-2657

FLORENTINO RIVERA, CARMEN DE LEÓN RIVERA,
CONJUGAL PARTNERSHIP RIVERA-DE LEÓN,

Plaintiffs, Appellants,

v.

CENTRO MÉDICO DE TURABO, INC., d/b/a HIMA SAN PABLO CAGUAS,

Defendant, Appellee,

DR. MARCIAL WALKER; JANE DOE; CONJUGAL PARTNERSHIP WALKER-DOE;
DR. LYDIA DÍAZ-BORRÁS; JOHN DOE; CONJUGAL PARTNERSHIP DOE-DÍAZ;
COMPANIES A-Z; JOHN RICHARD POE; PETER MOE,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

Seth A. Erbe, with whom Jose R. Ortiz-Velez, Pedro F. Soler-Muñiz, David C. Indiano, Ada Sofia Esteves, and Indiano & Williams, P.S.C. were on brief, for appellants.
Heidi Rodriguez, with whom Giselle Lopez Soler and Pietrantoni Mendez & Alvarez LLP were on brief, for appellees.

July 31, 2009

**LIPEZ, <u>Circuit Judge</u>**.  This case requires us to determine the enforceability of a forum selection clause embedded in informed consent documents presented to a patient before a medical procedure.  The appellants, Florentino Rivera, his wife Carmen de León Rivera, and their conjugal partnership, filed suit against the Centro Médico de Turabo, Inc., which does business as HIMA San Pablo Caguas ("HIMA" or "the hospital"), in the United States District Court for the District of Puerto Rico, alleging medical malpractice.  HIMA moved to dismiss the complaint, arguing that, pursuant to a forum selection clause contained in two preoperative consent forms signed by Rivera, the Commonwealth Court of First Instance was the exclusive venue for any claims against the hospital.  The district court granted HIMA's motion to dismiss based on the forum selection clause.  For the reasons set forth below, we affirm.

**I.**

## A.  Factual Background

Since this appeal arises from a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we "assume the truth of all well-pleaded facts" in the complaint and "indulge all reasonable inferences that fit the plaintiff's stated theory of liability."  <u>Centro Médico de Turabo, Inc.</u> v. <u>Feliciano de Melecio</u>,

406 F.3d 1, 5 (1st Cir. 2005) (quotation marks and citation omitted).[1]

On November 9, 2005, Rivera, a 65-year-old male, visited the office of Dr. Marcial Walker to discuss the results of a test indicating elevated levels of PSA (Prostate Specific Antigen) in Rivera's blood.  Based on the test results, the doctor scheduled Rivera for a prostate biopsy.  The biopsy, performed on December 12, 2005, revealed a prostatic adenocarcinoma – a tumor in Rivera's prostate.  In an appointment after the biopsy, Dr. Walker recommended the surgical removal of Rivera's prostate.  The procedure was scheduled for February 21, 2006.

Before the surgery, Rivera was examined by Dr. Lydia Díaz Borrás to determine whether he should receive medical clearance for the procedure.  Dr. Díaz Borrás noted that the patient suffered from several medical conditions, including hypertension (high blood pressure) and hyperlipidemia (elevated levels of lipids in the blood stream), and that he exhibited several risk factors for cardiac and pulmonary conditions.  Nevertheless, she declared him to be clinically stable for surgery.  On February 16, 2006, Rivera also passed a pre-anaesthesia screening.

The surgery was performed as scheduled on February 21, 2006.  However, due to significant blood loss resulting from a

_____

[1] As we discuss below, certain procedural irregularities distinguish this case from the run-of-the-mill 12(b)(6) dismissal. Those irregularities do not affect this factual summary.

-3-

hemorrhage during surgery, Rivera required several blood transfusions. The next day, he developed weakness or paralysis on one side of his body and was diagnosed with a "stroke in evolution," i.e., the preliminary stages of a stroke.

Rivera was discharged on February 27 to an extended care facility, where he remained for five weeks of recovery and rehabilitation. During this time, he received a course of antibiotics to treat a postoperative infection that he had developed at the hospital. After his discharge from the rehabilitation center, Rivera had a follow-up appointment with Dr. Walker, who recommended a second operation to remedy some of the negative effects of the initial procedure. Rivera refused.

Rivera alleges that, as a result of his treatment at HIMA, he is partially disabled and cannot enjoy life as he did before the surgery. Despite the aid of a leg brace and a cane, he requires assistance to walk, as well as to perform daily tasks such as bathing and eating. When the complaint was filed, Rivera received physical and occupational therapy multiple times a week and expected the disability to be permanent. The complaint also alleges that both Rivera and his wife have endured significant mental anguish as a result of his medical condition.

## B.  Procedural History

On February 16, 2007, appellants filed a complaint in United States District Court for the District of Puerto Rico,

alleging medical malpractice and breach of the duty of care, and asserting a right to recover damages under Articles 1802 and 1803 of the Civil Code of Puerto Rico (P.R. Laws Ann. tit. 31, §§ 5141 and 5142).[2] The complaint named as defendants the hospital, Drs. Walker and Díaz Borrás, several "placeholder" defendants representing unidentified individuals who may have contributed to Rivera's injuries, and unidentified insurance companies from whom the hospital had purchased malpractice coverage; the placeholder defendants were to be identified through discovery.

The complaint alleged that Rivera had not been informed about many of the less radical alternatives to prostate removal or about the risks and benefits of each treatment option, and therefore that he never gave his informed consent to the operation. Rivera also accused the hospital and the doctors of negligence in the selection and execution of Rivera's course of treatment, including the preoperative evaluations, which the complaint characterized as "substandard." In sum, Rivera claimed that the defendants were jointly and severally liable both for the treatment expenses arising from his postoperative complications and for

---

[2] Section 5141 provides generally that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." Section 5142 embodies the principle of respondeat superior, and provides, inter alia, that "[t]he obligation imposed by § 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible."

damages sufficient to compensate him (and his wife) for their physical and mental suffering.

The hospital filed a motion to dismiss based on a forum selection clause contained in two different consent forms that Rivera had signed prior to surgery. On February 16, 2006, five days before the operation, Rivera signed a form entitled "Consent to Administer Anesthesia and Conscious Sedation." On February 26, 2006, the day of the procedure itself, he signed an additional "Consent to Surgery" form. Both documents contained the following identical clause: "In the event that by act or omission I consider that physical, emotional or economic damages have been caused to me, I expressly agree to submit to the Jurisdiction of the Court of First Instance of the Commonwealth of Puerto Rico, for any possible claim." On both forms, this clause was in boldface type and surrounded by a box that set it apart from the rest of the text. Each document further required that Rivera specifically place his initials next to the forum selection clause and also that he separately sign under a certification that: "this consent has been explained to me and to my entire satisfaction and that I understand the content of this form, that I have read and I have been given a copy of the same, thus, I accept its terms as patient . . . ."

In its motion to dismiss, HIMA argued that, pursuant to the forum selection clause, the Commonwealth Court of First Instance was the exclusive venue for Rivera's claims against the

-6-

hospital. In reply, Rivera argued that the consent forms should not be considered freely negotiated contracts; that, as a general matter, forum selection clauses should not be enforced in medical malpractice cases; and, in the alternative, that at least Rivera's wife, as a non-signatory, should not be bound by the forum selection clause in the consent form. The district court granted the motion to dismiss. Rivera appeals.

## II.

In this circuit, we treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6). Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 387 & n.3 (1st Cir. 2001); compare Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289-90 (11th Cir. 1998) (describing the circuits' varying approaches to motions to dismiss on the basis of forum selection clauses and concluding that such motions are most properly brought under Rule 12(b)(3)). We review the grant of a motion to dismiss for failure to state a claim de novo. Vernet v. Serrano-Torres, 566 F.3d 254, 258 (1st Cir. 2009). In such cases, the district court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable

theory." <u>LaChapelle</u> v. <u>Berkshire Life Ins. Co.</u>, 142 F.3d 507, 508 (1st Cir. 1998).

The fact that a motion to dismiss on the basis of a forum selection clause is treated as a 12(b)(6) motion has certain consequences for the materials that a district court may appropriately consider when ruling on such a motion. "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." <u>Trans-Spec Truck Serv., Inc.</u> v. <u>Caterpillar, Inc.</u>, 524 F.3d 315, 321 (1st Cir. 2008); <u>see also</u> Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). We have recognized an exception to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint," which courts may properly consider on 12(b)(6) motions. <u>Alternative Energy, Inc.</u> v. <u>St. Paul Fire and Marine Ins. Co.</u>, 267 F.3d 30, 33 (1st Cir. 2001) (quotation marks and citation omitted). If, however, the supplemental materials submitted to the district court fall outside this narrow class of documents, and the court

chooses to consider them using Rule 12(d)'s conversion procedure, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, appellants' original complaint did not mention the forum selection clause, nor did it include copies of the consent forms as an exhibit to the complaint. Instead, the consent forms containing the forum selection clause were first brought to the district court's attention on the hospital's motion to dismiss the complaint. In their opposition to the motion, appellants did not challenge the authenticity of the documents, but instead introduced allegations that Rivera's consent to the forum selection clause was obtained by fraud or overreaching. These allegations were supported by affidavits from Mr. and Mrs. Rivera. Additionally, appellants argued that the court should treat the hospital's motion as one for summary judgment and allow appellants to conduct further discovery regarding the forum selection clause.

The following week, appellants commendably sought leave to file an amended complaint that would, among other things, "supplement the allegations [in the complaint] concerning lack of informed consent" and include the affidavits from Rivera and his wife, "so that [the] averments may be considered pleadings in the true sense of the word." It was not until months later, in its decision granting the motion to dismiss, that the district court

also "abstain[ed] from deciding" on plaintiffs' pending motion to amend. Appellants do not now challenge this disposition -- indeed, it is unclear whether the decision to abstain would even be appealable as an interlocutory order.

However, in spite of the district court's disposition of appellants' request to amend their pleadings and an explicit statement that it would consider only the factual summary in the plaintiffs' original complaint and the two consent forms themselves, the court's actions belied its statements. In fact, the court expressly considered the factual allegations of overreaching found in appellants' amended complaint and their opposition to the motion to dismiss. By considering appellants' factual allegations, the court effectively converted the hospital's motion to dismiss into a motion for summary judgment. On appeal, neither side objects to the court's consideration of factual allegations beyond the complaint or to the fact that the parties did not receive notice, pursuant to Rule 12(d), that it intended to do so. Appellants continue to press the same factual allegations on appeal. Accordingly, while we do not endorse the district court's treatment of the motion to dismiss (i.e., its sub silentio conversion into a motion for summary judgment), we accept it for the purposes of this appeal. We are particularly comfortable doing so in this instance because, as we discuss below, even accepting the allegations in the affidavits as true, they would not suffice

to prove the kind of fraud or overreaching required to render the forum selection clause unenforceable.[3] See, e.g., Silva, 239 F.3d at 388 ("[W]e are not bound by the label below, and agree that the case should have been dismissed.") (quotation marks and citation omitted).

## III.

Although this is a suit based on diversity, we need not reach the unsettled issue of whether "forum selection clauses are to be treated as substantive or procedural for Erie purposes." Lambert v. Kysar, 983 F.2d 1110, 1116 & n.10 (1st Cir. 1993). This is because "there is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum-selection clauses." Silva, 239 F.3d at 387 n.1; see also id. (noting that the Puerto Rico Supreme Court has adopted federal jurisprudence regarding the general enforceability of forum selection clauses). We therefore apply federal common law.

---

[3] Relatedly, appellants argue that the district court erred by failing to allow them to conduct additional discovery on the circumstances surrounding the inclusion of the forum selection clause in the consent documents. Even interpreting the district court's actions as a sua sponte conversion of the 12(b)(6) motion into a motion for summary judgment, we find that it was not an abuse of discretion for the district court to conclude that additional discovery was unnecessary because we find that none of appellants' allegations, even if substantiated, would render the forum selection clause unenforceable. Cf. Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 127-8 (1st Cir. 2006) (noting that, in the Fed. R. Civ. P. 56(f) context, a motion for additional discovery must establish that the facts sought would influence the outcome of the motion for summary judgment).

Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory. "Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998). Rivera argues that the clause in HIMA's consent forms was permissive; that it was intended only to affirmatively confer jurisdiction upon the Commonwealth Court of First Instance, and should not be interpreted to limit the jurisdiction of federal district courts. We reject that assertion.[4]

In Redondo Constr. Corp. v. Banco Exterior de España, S.A., 11 F.3d 3 (1st Cir. 1993), we considered language providing that "each [party] hereby expressly submits to jurisdiction of all Federal and State Courts located in the State of Florida." Id. at 5 (emphasis omitted). We explained that "[a]ffirmatively conferring Florida jurisdiction by consent does not negatively exclude any other proper jurisdiction." Id. at 6. Similarly, in

---

[4] HIMA argues that Rivera waived this permissive/mandatory argument below. We disagree.

-12-

<u>Autoridad de Energía Eléctrica de Puerto Rico</u> v. <u>Ericsson, Inc.</u>, 201 F.3d 15 (1st Cir. 2000), the clause at issue stated: "This contract will be governed and interpreted pursuant to the Laws of the Commonwealth of Puerto Rico and <u>the parties agree to submit to the jurisdiction of the courts of the Commonwealth of Puerto Rico</u>." <u>Id.</u> at 18 (emphasis added). Citing <u>Redondo</u>, we again concluded that the contractual language was merely an affirmative conferral of jurisdiction upon the Commonwealth courts, particularly in light of the fact that Ericsson, which was not the originator of the provision, was incorporated and had its principal place of business outside of Puerto Rico. <u>Id.</u> Accordingly, it made sense that the drafter of the contract and eventual plaintiff, the Power Authority of Puerto Rico, would require Ericsson to consent to the jurisdiction of the Puerto Rico courts in the event of any dispute, thereby obviating the need for any personal jurisdiction analysis. Id. at 19.

Certainly, the forum selection clause in HIMA's consent form shares the "agree to submit" language with the two cases invoked by appellants. However, "words are not viewed in isolation within a contract." <u>McAdams</u> v. <u>Mass. Mut. Life Ins. Co.</u>, 391 F.3d 287, 298 (1st Cir. 2004); <u>see</u> <u>also</u> <u>Smart</u> v. <u>Gillette Co. Long-Term Disability Plan</u>, 70 F.3d 173, 179 (1st Cir. 1995) (stating that "[a]ccepted canons of construction forbid the balkanization of contracts for interpretive purposes" (citing <u>Fashion House, Inc.</u> v.

K mart Corp., 892 F.2d 1076, 1084 (1st Cir. 1989))). Moreover, there is no "general rule for forum-selection clauses[;]" rather, we "base[] our conclusion on the specific language of the contract at issue."[5] Silva, 239 F.3d at 388. Here, unlike in Redondo or Ericsson, the "expressly agree to submit" language is preceded and informed by a qualifying phrase: "In the event that by act or omission I consider that physical, emotional or economic damages have been caused to me, I expressly agree to submit . . . ." (emphasis added). That is, the consent form required Rivera to assert any causes of action that he may have against the hospital in the Commonwealth courts. In contrast, by assenting to the clauses in Redondo and Ericsson, both of which lacked a similar introductory phrase, the signatories consented to the exercise of jurisdiction over themselves as defendants in order to avoid the personal jurisdiction analysis that would otherwise be required for out-of-state defendants. This difference in context is determinative, and we therefore conclude that the forum selection clause is mandatory.

---

[5] For the same reason, we reject appellant's argument that the absence of "typical mandatory terms" such as "shall," "exclusive," "only," or "must" requires a contrary result. See, e.g., Summit Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 13 (1st Cir. 2001) (holding that term in contract providing that parties "will submit" their dispute to a specified forum implied the exclusion of all other forums).

**IV.**

"Contractual provisions undertaking to provide where a suit may be brought in disputes arising out of the agreement are not uncommon."  14D Federal Practice & Procedure § 3803.1.  It is well established that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972); see also Silva, 239 F.3d at 386.  More specifically, a forum selection clause should be enforced unless the resisting party can show "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching . . . [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."  M/S Bremen, 407 U.S. at 15.  We therefore inquire whether appellants have overcome this strong presumption of enforceability, considering each of their arguments in turn.

**A.  Nature of Consent Form/Nature of Action**

Appellants claim that forum selection clauses, which are contractual in nature, cannot be included in medical consent forms which are designed to comply with physicians' obligations under Puerto Rico law to obtain informed consent to medical procedures. They argue that the forum selection clause, thus placed in an

-15-

informed consent form, is unreasonable and contrary to public policy for that reason alone and therefore should not be enforced.

This argument is too broad. Appellants cite no legal authority so holding. The placement of the forum selection clause in a consent form is just one of the factors to be considered in assessing a claim that enforcement of the clause is unreasonable under the circumstances. Absent a finding of procedural or substantive unconscionability, courts have repeatedly enforced forum selection clauses and arbitration agreements found in consent forms and similar documents. See, e.g., Wilcox v. Lexington Eye Inst., No. 53871-3-I, 2005 WL 1964481, at *8 (Wash. Ct. App. Aug. 15, 2005) (enforcing forum selection clause in surgical consent form); Covenant Health Rehab. of Picayune, L.P. v. Brown, 949 So. 2d 732, 741 (Miss. 2007) (enforcing those provisions of arbitration agreement contained in nursing home admissions form that were not found to be unconscionable); see also Wilkerson ex rel. Estate of Wilkerson v. Nelson, 395 F. Supp. 2d 281, 284 (M.D.N.C. 2005) (enforcing arbitration clause contained in "a form typically furnished to and completed by patients while in the waiting room" that also included statement of financial responsibility and insurance authorization).

Relatedly, appellants argue that it would be inappropriate to hold Rivera to the forum selection clause because their lawsuit was a tort action and not a breach of contract

-16-

action.  They state that the district court's reliance on contract cases like <u>Silva</u>[6] is unjustified because "the present case is a tort case, which carries with it entirely different public policy considerations - a patient's life, health and well being."  That argument is also unpersuasive.  The applicability of a forum selection clause does not depend on the nature of the underlying action.  One of the classic Supreme Court cases concerning forum selection clauses, <u>Carnival Cruise Lines, Inc.</u> v. <u>Shute</u>, 499 U.S. 585 (1991), enforced a non-negotiated forum selection provision contained in the passengers' cruise tickets in a personal injury action.  Courts have routinely followed that example.

Moreover, it is the language of the forum selection clause itself that determines which claims fall within its scope. Here, the provision plainly requires that a suit sounding in tort must be brought according to its terms: "In the event that by act or omission I consider that physical, emotional or economic damages have been caused to me, I expressly agree to submit to the Jurisdiction of the Court of First Instance of the Commonwealth of Puerto Rico, for any possible claim."  Indeed, this language specifically contemplates its applicability to a malpractice claim. Accordingly, the nature of the instant action does not preclude enforcement of the forum selection clause.

---

[6] In <u>Silva</u>, we held that a forum selection clause contained in an employment contract between a corporation and an independent contractor was mandatory, valid, and enforceable.  239 F.3d at 386.

**B. The Forum Selection Clause as a Contract of Adhesion**

Appellants claim that if it is proper for the consent forms to include contractual terms, then the forum selection clause is a contract of adhesion,[7] "to be construed against [its] drafter, and [is] therefore invalid." The mere fact that a contract is one of adhesion does not render it per se unenforceable, as appellants' argument would suggest. "[A]dhesion does not imply nullity of a contract." Nieves v. Intercontinental Life Ins. Co. of P.R., 964 F.2d 60, 63 (1st Cir. 1992) (citation omitted). "If the wording of the contract is explicit and its language is clear, its terms and conditions are binding on the parties." Id. (collecting Puerto Rico cases); see also Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 331 (1st Cir. 2000) ("[O]f course, even a contract of adhesion is enforced unless unconscionable or unfair."). Here, because the import of the forum selection provision is clear, "we do not have to address whether the . . . doctrine of contra preferentum applies." Pelletier v. Yellow Transp., Inc., 549 F.3d 578, 582 (1st Cir. 2008); see also Fireman's Fund Ins. Co. v. M.V. DSR Atl., 131 F.3d 1336, 1339 (9th Cir. 1997) ("As we find no ambiguity in the forum clause, whether or not [the contract] is a contract of

---

[7] A contract of adhesion is a contract "offered by the authoring party on a take it or leave it basis rather than being negotiated between the parties." Northwestern Nat'l Ins. Co. v. Donovan, 916 F.2d 372, 377 (7th Cir. 1990) (applying federal common law) (citing Todd S. Rakoff, Contracts of Adhesion: An Essay in Reconstruction, 96 Harv L. Rev. 1174, 1242-43 (1983)).

adhesion is of no relevance to the result we reach in this matter.").

## C.  **Fraud and Overreaching**

Appellants argue that "the clause was invalid for such reasons as fraud or overreaching." M/S Bremen, 407 U.S. at 15.  In support of this claim, they cite the affidavits submitted to the district court by Rivera and his wife, which were essentially identical.  Florentino Rivera's affidavit stated, in relevant part:

> 5.   It was not explained to me by anyone at HIMA that by signing the . . . documents I was renouncing to file a case before the Federal District Court for the District of Puerto Rico.  Said document does not state that I am renouncing to file a case before the Federal District Court for the District of Puerto Rico.  When signing these forms I thought I was merely authorizing the anaesthesia and the operation.
> 6.   I do not know the difference between the Courts of the Commonwealth of Puerto Rico and the United States District Court for the District of Puerto Rico.
> 7.   I was not informed, at any time prior to the signing of these forms that I was waiving his [sic] right to a trial by jury, as I thought that the Courts of the Commonwealth of Puerto Rico have juries in all cases, as is my common knowledge of the Courts in the United States.
> 8.   I was not advised that I could consult this waiver of my rights with an attorney, nor did I understand that I needed to do so, because in my mind I was not waiving any rights, I was simply consenting to the operation and the anaesthesia.
> 9.   Should an opportunity been [sic] afforded for me to seek legal advice on the matter, I would not have signed either of the forms and would have either demanded that the

-19-

waiver language be removed or gone elsewhere for the operation.

10. I did not negotiate in any way, form or manner what is written in those documents, I was just demanded from the hospital personnel to sign in order to have the operation.

1. Fraud

A contract is voidable (and thus unenforceable) if "a party's manifestation of assent is induced by either a fraudulent or material misrepresentation by the other party upon which the recipient is justified in relying." Restatement (Second) of Contracts, § 164 (1979) (cited in Nash v. Trustees of Boston Univ., 946 F.2d 960, 967 (1st Cir. 1991)). Rivera's averments do not describe fraud. They say only that (1) no one verbally explained the forum selection clause to appellants or told them that they could consult an attorney; (2) appellants did not attempt to negotiate the clause in any way, but, "should an opportunity [have] been afforded" to seek legal counsel, appellants would have either asked that the clause be removed or sought treatment elsewhere; and (3) appellants ultimately misunderstood the forms and their implications. In essence, the affidavit describes the absence of an explanation about the significance of the forum selection clause.

This omission, in the circumstances here, cannot serve as a basis for a misrepresentation claim:

> The assertion 'I didn't know what was in the contract that I signed' is made by litigants

> frequently but almost never successfully. Absent fraud, a person is deemed to know the contents of a contract that he or she signs . . . . Thus whether plaintiffs actually knew of the arbitration clause in their contracts is irrelevant; that knowledge is imputed as a matter of law.

Parler v. KFC Corp., 529 F. Supp. 2d 1009, 1014 (D. Minn. 2008) That logic applies here as well.

### 2. Overreaching

"[A]lthough there is some ambiguity as to the precise boundaries of what constitutes 'overreaching,' a nebulous concept at best," Haynsworth v. The Corporation, 121 F.3d 956, 965 (5th Cir. 1997), we understand "overreaching" to refer to one party's unfair exploitation of its overwhelming bargaining power or influence over the other party. See, e.g., Silva, 239 F.3d at 389 (inquiring whether one party inappropriately used its bargaining power to coerce or exploit another); Ginter ex rel. Ballard v. Belcher, Prendergast, & Laporte, 536 F.3d 439, 449 n.2 (5th Cir. 2008) (Dennis, J., dissenting) (evidencing similar understanding of overreaching); Outek Carribean Distrib., Inc. v. Echo, Inc., 206 F. Supp. 2d 263, 267 (D.P.R. 2002) (same). But the mere fact of this inequality is not enough to render an agreement unenforceable. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32 (1991) (making this observation in context of agreement to arbitrate); Outek Carribean, 206 F. Supp. 2d at 267. The reference in M/S Bremen to "undue influence," and "overweening bargaining power,"

-21-

407 U.S. at 12 (emphasis added), is instructive.  There must be some evidence that the party has exploited this bargaining power in a way that the courts will not tolerate.  <u>Outek Carribean</u>, 206 F. Supp. 2d at 267.

Similarly, contrary to appellants' suggestion, "overreaching must be based on something more than the mere fact that the clause was a 'boilerplate' provision printed on the back of a form contract.  As noted in our discussion of the contract of adhesion claim, it is not the law that one must bargain for each and every written term of a contract."  Lambert, 983 F.2d at 1120 (internal quotation marks and citation omitted).  For this reason, "the fact that a contract was in boilerplate form will not, by itself, render it unfair or invalid."  Outek Carribean, 206 F. Supp. 2d at 267; see also Carnival Cruise Lines, 499 U.S. at 593 (mere fact that term in contract was not negotiated does not make it unenforceable); Diaz-Rosado v. Auto-Wax Co., Inc., No. Civ. 04-2296, 2005 WL 2138794, at *3 (D.P.R. 2005).  Put another way, although appellants emphasize "the relative disparity in the bargaining positions of the parties . . . , the presumption in favor of enforcing a forum selection clause applies even if the clause was not the product of negotiation."  2215 Fifth St. Assocs., LP v. U-Haul Intern., Inc., 148 F. Supp. 2d 50, 56 (D.D.C. 2001) (quotation marks and citation omitted).  Indeed, the district court of Puerto Rico has enforced a forum selection clause printed

in English on a cruise ticket where the passenger spoke only Spanish because "[t]he examination of the circumstances surrounding the passengers' purchase and retention of the contract, does not depend upon actual knowledge of the terms in the contract of passage, but focuses instead on the opportunity for such knowledge." De La Mota Estrella v. Royal Caribbean Cruise Lines, Inc., 2006 WL 2601657, at *3 (D.P.R. 2006) (quotation marks and citation omitted).

There are certainly suggestions of overreaching here. Rivera's relationship with the hospital grew out of a grave medical condition. He was likely more focused on that medical condition than the significance of the documents that he was asked to sign. He was not thinking about possible lawsuits. This reality in cases like this one undoubtedly prompted the Puerto Rico Office of the Patient Advocate, subsequent to the filing of this lawsuit, to promulgate a regulation prohibiting the practice of including a forum selection clause in an informed consent document. See Part IV. D.2, infra.

Nevertheless, despite this regulatory initiative, the federal common law of overreaching as it presently stands convinces us that this is not a case where the presumption in favor of enforcing a forum selection clause is overcome. The language of the clause was clear. The clause was in bold print and marked off from the rest of the one-page form by a special box. It was not

"buried in fine print" or otherwise obscured. The clause required the patient to signal his assent by placing his initials next to it. See Wilkerson, 395 F. Supp. 2d at 287 (rejecting plaintiff's argument that arbitration clause must be separately negotiated and finding "no claim of ambiguity" where "[p]laintiff signed the form on the separate signature line before the arbitration clause").

Furthermore, Rivera signaled his assent to the forum selection clause on two separate occasions, the first of which was five days before his surgical procedure. During the five days between his signing of the "Consent to Administer Anesthesia and Conscious Sedation" form and the "Consent to Surgery" form on the day of his operation, Rivera had the opportunity to consult an attorney regarding the forum selection clause, and to consider his assent to it outside the pressures of a hospital setting. He also had the option of going to another hospital. Under all of these circumstances, we reject appellants' argument that the forum selection clause is unenforceable because the Hospital procured Rivera's consent by unfairly exploiting its bargaining advantage. See, e.g., Wilcox, 2005 WL 1964481, at *2-3 (rejecting plaintiff's argument that forum selection clause should not be enforced due to "undue influence," and "overweening bargaining power," where she had the opportunity to read the consent form in advance of her surgery and again on the day of the procedure, the clause was

clearly written, and plaintiff's signature appeared directly underneath the forum selection provision).

**D.  Public Policy**

1. The General Argument

In their opening brief, appellants make the general argument that to enforce a forum selection clause like the one at issue here would "go[] against the social order that as a civilized society, we are obligated to try to maintain." Elaborating on this contention, they state that in the context of hospital consent forms, "the application of a rule that a party has a duty to read the provisions of a form before he signs it and hence is bound by all provisions therein raises significant public policy concerns." We disagree.  It simply cannot be the case that, absent fraud, coercion, or overreaching -- which we have determined were absent from this scenario -- it would violate public policy to hold an individual to a clearly stated forum selection clause in a one-page document.

The fact that this document was signed in a health care context is not, in and of itself, determinative.  "It is . . . significant to note that no court has ever reached the broad conclusion that public policy precludes the use of private arbitration agreements in the area of medical services." Buraczynski v. Eyring, 919 S.W.2d 314, 318 (Tenn. 1996) (citations omitted).  The clause at issue here merely provides an alternative

judicial forum for appellants' complaint, rather than an entirely different adjudicative process. It would be a strange outcome indeed if we found that it violated public policy to require two parties to litigate their claims in the Commonwealth courts when their interactions took place exclusively in Puerto Rico and their relationship was governed by the tort law of the Commonwealth.

2. Regulation 7504

On May 12, 2008, after initial briefing in this case had been completed, the Office of the Patient's Advocate of Puerto Rico (OPA) passed Regulation No. 7504, entitled "Regulation for the Implementation of the Provisions of Public Law Number 194, enacted August 25, 2000, as amended, 'Puerto Rico Patients' Bill of Rights and Responsibilities.'"[8] Among other things, this regulation prohibits a health care provider from including in informed consent documents any "[a]spects about any decision regarding the possibility of any act of malpractice by a provider" or "legal clauses foreign to the sphere or field of medicine or health . . . such as, but not limited to, forum selection clauses." Article 13, Section 8C of Regulation 7504 of May 12, 2008. The Regulation specifically provides, as a rationale for this prohibition, the notion that decisions regarding potential malpractice suits made by patients while signing informed consent

_____

[8] Public Law No. 194 of August 25, 2000, P.R. Laws Ann. tit. 24, §§ 3041-3058.

-26-

documents "may be erroneous in the face of a moment of vulnerability of the patient, given the health condition of the patient and dependence on the institution or provider at that given moment." In their Reply Brief, appellants attempt to use this regulation to argue that Puerto Rico public policy forbids HIMA's actions in this case.

This argument cuts both ways. As HIMA points out in its sur-reply brief, the default position under Article 3 of the Puerto Rico Code is that laws "shall not have a retroactive effect unless they expressly so decree." P.R. Laws Ann. tit. 31, § 3. Neither Regulation 7504 nor its authorizing statute, the Patients' Bill of Rights, purports to apply retroactively; to the contrary, Article 26 of Regulation 7504 expressly provides for its immediate, but not retroactive, application. This fact not only forbids appellants from explicitly relying on Regulation 7504 to render the forum selection clause illegal, but it further calls into question their assertion that the public policy of Puerto Rico at the time Rivera signed the forum selection clause prohibited its inclusion in a consent form. Certainly, whatever its legal status or binding effect,[9] the Regulation is persuasive evidence of Puerto Rico's

---

[9] HIMA also argues at length in its sur-reply brief that Regulation 7504 is null and void because it was not properly adopted in compliance with the requirements of the Puerto Rico Uniform Administrative Procedures Act, and because OPA did not have the legal authority to issue such a regulation. HIMA has submitted an extensive supplemental appendix containing, inter alia, court documents, briefs, and case law supporting this contention.

public policy <u>today</u>.  Given that the regulation is neither retroactive nor written in terms indicating an intent to codify some pre-existing public policy judgment, it does not help appellants here.

## E.  Waiver of Right to Jury

Finally, we reject appellants' argument that the forum selection clause is unenforceable because an individual's waiver of his right to trial by jury must be unequivocal.  As the Supreme Court held in <u>Minneapolis & St. Louis R.R. Co.</u> v. <u>Bombolis</u>, 241 U.S. 211, 217 (1916), the Seventh Amendment does not apply to civil proceedings in state court.  For this reason, medical malpractice cases in the Commonwealth Courts of First Instance may be tried without a jury without offending the Fourteenth Amendment.[10]  For this reason, courts have routinely enforced forum selection clauses consenting to venue in jurisdictions where civil cases are not tried to juries.  <u>See</u>, <u>e.g.</u>, Stephen J. Ware, <u>Arbitration Clauses, Jury-Waiver Clauses and Other Contractual Waivers of Constitutional Rights</u>, 67 Law & Contemp. Probs. 167, 189-93 & n. 147 (2004) (collecting cases).

---

Because we conclude that Regulation 7504 does not apply to this case, we need not consider its validity.

[10] "It bears noting that adoption of [plaintiffs'] Seventh Amendment argument would render contrary to public policy almost any forum selection clause providing for resolution in a foreign forum, as very few countries provide for jury trials in civil cases." <u>Holland America Line, Inc.</u> v. <u>Wartsila N. Amer., Inc.</u>, 485 F.3d 450, 457 n.4 (9th Cir. 2007).

-28-

**V.**

The Puerto Rico Supreme Court has "repeatedly recognized" that "individuals who suffer distress because a relative or loved one is tortiously injured have a cause of action under Article 1802 against the tortfeasor." Mendez-Matos v. Municip. of Guaynabo, 557 F. 3d 36, 57 (1st Cir. 2009) (quotation marks omitted). To succeed on such a claim, a plaintiff must demonstrate that she has suffered emotional harm caused by the tortious conduct of the defendant towards the plaintiff's loved one. Id. "The cause of action is derivative and depends on the viability of the underlying claim of the relative or loved one." Id. This is the nature of the claim asserted by Carmen de León Rivera; the complaint alleged that she has suffered "by virtue of Mr. Rivera's conditions."

We have stated that "claims involving the same operative facts" as a claim for breach of contract that is subject to a forum selection clause should also be litigated in the forum chosen by the parties. Lambert, 983 F.2d at 1121-22; see also Banco Popular de Puerto Rico v. Airborne Group PLC, 882 F. Supp. 1213, 1216-17 (D.P.R. 1995) (same). This is the only sensible outcome when the related cause of action is not only related to, but dependent upon, the subject cause of action. See, e.g., Perez v. Carnival Cruise Lines, 993 F. Supp. 39, 42 n.5 (D.P.R. 1998) (dismissing plaintiff's claims against defendant's insurance companies because they were derivative of the cause of action subject to the forum

-29-

selection clause).  To hold otherwise would be to ignore the fundamental principle of judicial economy.

## VI.

For the foregoing reasons, the judgment of the district court is **<u>affirmed.</u>**

So ordered.