# United States Court of Appeals
## For the First Circuit

Nos. 16-1438
     16-1447

AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO,

Plaintiff, Appellee,

v.

VITOL S.A.; VITOL, INC.,

Defendants, Appellants,

FIDELITY AND DEPOSIT CO. OF MARYLAND; FULANO DE TAL;
FIADORAS A, B AND C; ASEGURADORAS X, Y AND Z;
CARLOS M. BENÍTEZ, INC.,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Steven J. McAuliffe,* U.S. Senior District Judge]

Before

Torruella, Kayatta, and Barron,
Circuit Judges.

Gregory G. Garre, with whom Alexandra Shechtel, Latham &
Watkins, LLP, Neal S. Manne, Alexander L. Kaplan, Weston L.
O'Black, Michael C. Kelso, Susman Godfrey L.L.P., Eduardo A. Zayas-
Marxuach, Francisco G. Bruno-Rovira, McConnell Valdés LLC,
Andrés W. López and The Law Offices of Andrés W. López, P.S.C.,

---

* Of the District of New Hampshire, sitting by designation.

were on brief, for appellants.

Eduardo J. Corretjer-Reyes, with whom Corretjer, L.L.C. was on brief, for appellee.

_____

June 13, 2017

_____

**TORRUELLA**, **Circuit Judge**.  The district court remanded this case to the Commonwealth of Puerto Rico Court of First Instance, San Juan Part, because it determined that the forum selection clauses at issue were enforceable, and that the unanimity requirement of 28 U.S.C. § 1446(b)(2)(A) therefore could not be satisfied.  We affirm.

## I.  Background[1]

Between August 2005 and December 2008, the Autoridad de Energía Eléctrica de Puerto Rico (the Puerto Rico Electric Power Authority or "PREPA") executed six contracts for the delivery of fuel oil with entities whose names all began with "Vitol" -- and we shall refer to them as such here.  For present purposes, it suffices that at least one of the entities before us -- namely Vitol, Inc., a Delaware corporation headquartered in Houston, Texas -- admits that it is a party or assignee to the six contracts before us.  PREPA is a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico.  P.R. Laws Ann. tit. 22, § 193.

---

[1]  Given the significant number of disagreements between the parties about the facts of the case, we present only a brief summary of the facts, with a focus on resolving only the question that is before us -- whether to remand this case to the courts of the Commonwealth.  We do this in large part because we do not wish to predetermine the outcome of the litigation in the Commonwealth courts.

After PREPA learned that Vitol, S.A. -- following a United Nations investigation that concluded that Vitol, S.A. had paid, or had caused illegal surcharges to be paid, to Iraqi public officials -- had pled guilty to first degree grand larceny in New York state court, PREPA filed suit under, inter alia, Puerto Rico Law No. 458 of December 29, 2000, P.R. Laws Ann. tit. 3, §§ 928-928i ("Law 458").  This law prohibits government instrumentalities and public corporations, such as PREPA, from awarding bids or contracts to persons (including juridical persons) who have been convicted of "crimes that constitute fraud, embezzlement or misappropriation of public funds listed in § 928b of this title." P.R. Laws Ann. tit. 3, § 928.  "Undue intervention in the processes of awarding bids or in government operations,"  "[b]ribery, in all its modalities," and "[o]ffer[s] to bribe" are among the crimes listed in section 928b.  Id. § 928b.

Each of the contracts at issue in this case included a substantively identical choice of law and forum selection clause:

> The Contract shall be governed by, and construed in accordance with the laws of the Commonwealth of Puerto Rico.  Also, the contracting parties expressly agree that only the state courts of Puerto Rico will be the courts of competent and exclusive jurisdiction to decide over the judicial controversies that the appearing parties may have among them regarding the terms and conditions of this Contract.

All but the first contract also included a "Sworn Statement" clause which read as follows:[2]

> Previous to the signing of this Contract, the Seller will have to submit a sworn statement that neither [the] Seller nor any of its partners have been convicted, nor have they plead [sic] guilty of any felony or misdemeanor involving fraud, misuse or illegal appropriation of public funds as enumerated in Article 3 of Public Law number 428 of September 22, 2004, as amended.[3]

Note that, although the "Sworn Statement" clauses only speak to convictions and guilty pleas, in the actual sworn statements, the seller also stated -- as Law 458 required -- that it had "no knowledge of being under judicial, legislative or administrative investigation in Puerto Rico, the United States, or in any other country."  See P.R. Laws Ann. tit. 3, § 928f.

Each contract also included a "Contingent Fees" clause, which provided, inter alia:

> The Seller represents and warrants that it is authorized to enter into, and to perform its obligations under this Contract and that it is not prohibited from doing business in Puerto Rico or

---

[2]  Although the first contract did not include a "Sworn Statement" clause, such a sworn statement was provided, as it had to be pursuant to Law 458.  P.R. Laws Ann. tit. 3, § 928f.

[3]  Puerto Rico Law No. 428-2004 amended Law 458.  It obligates any person interested in bidding on and being awarded a government contract to submit a sworn statement representing that said person has not been convicted of any of the crimes listed in Law 458, and whether said person is being investigated for any such crime.

barred from contracting with agencies or instrumentalities of the Commonwealth of Puerto Rico.

In addition, pursuant to Law 458, each contract was "deemed to have . . . included . . . for all legal purposes" a "penal clause or clauses that expressly set forth the provisions contained [in] § 928c of this title."  Id. § 928e.  In turn, section 928c provides:

> The conviction or guilt for any of the crimes listed in § 928b of this title shall entail, in addition to any other penalty, the automatic rescission of all contracts in effect on said date between the person convicted or found guilty and any agency or instrumentality of the Commonwealth government, public corporation, municipality, the Legislative Branch or the Judicial Branch of Puerto Rico.  In addition to the rescission of the contract, the Government shall have the right to demand the reimbursement of payments made with regard to the contract or contracts directly affected by the commission of the crime.

Id. § 928c (emphasis added).

Four of the six contracts also contained a "Code of Ethics" clause, by which Vitol agreed "to comply with the provisions of . . . [the] Code of Ethics for the Contractors, Suppliers and Economic Incentive Applicants of the Executive Agencies of the Commonwealth of Puerto Rico" -- which meant that Vitol accepted, inter alia, the obligation to "disclose all the

-6-

information needed for [PREPA] to evaluate the transaction in detail, and make correct and informed decisions." Id. § 1756(b).[4]

Vitol never informed PREPA that: in 2004 (before any of the six contracts with PREPA had been signed) the Independent Inquiry Committee of the United Nations Oil-for-Food Programme began investigating Vitol S.A. regarding its participation in that program;[5] on October 27, 2005, the Independent Inquiry Committee issued a final report (at which point only the first of the six contracts before us had been signed) concluding that Vitol S.A. had paid or had caused illegal surcharges to be paid to Iraqi public officials in order for Vitol S.A. to be awarded contracts to lift Iraqi oil during and as part of Vitol S.A.'s participation in the Oil-for-Food Programme; on November 20, 2007 (at which point four of the six contracts before us had been signed), Vitol S.A. pled guilty to first degree grand larceny in New York state court

---

[4] The Code of Ethics at issue also contains a provision that requires a person who contracts with any executive agency of the Commonwealth to certify that this person has not been convicted of certain crimes, and further imposes a continuous duty to inform. However, it appears that this provision only applies to convictions in the "federal or Commonwealth jurisdiction," and therefore is not pertinent here, for Vitol, S.A. was convicted in state court in New York. P.R. Laws Ann. tit. 3, § 1756(p).

[5] PREPA alleges that Vitol learned of the investigation between December 2005 and April 25, 2006. For the purposes of affirming this remand order, we do not need to decide whether this allegation is accurate.

pursuant to a plea agreement for actions related to its participation in the United Nations Oil-for-Food Programme.

PREPA eventually learned of the guilty plea,[6] and, in November 2009, filed a complaint in the Commonwealth of Puerto Rico Court of First Instance, San Juan Part, against Vitol, Inc. and Vitol, S.A., alleging that two oil supply contracts it held with Vitol, Inc. were null due to Law 458 and the Puerto Rico Civil Code,[7] and seeking reimbursement of all payments made under the contracts. On December 14, 2009, invoking diversity jurisdiction, defendants removed the claim to federal court. In December 2012, PREPA filed a second complaint in the Commonwealth court regarding four additional oil supply contracts, seeking similar relief. The total amount of the payments PREPA seeks to have reimbursed is approximately $3.89 billion. The defendants removed this second action to federal court as well, where the two cases were consolidated.

---

[6] The precise date on which PREPA learned of Vitol S.A.'s guilty plea is disputed. PREPA argues that it learned about the guilty plea between May 13, 2009 and June 23, 2009, whereas the defendants argue that PREPA learned about it by at least May 13, 2009. We need not resolve this matter, however, to determine that this case was rightly remanded to the Puerto Rico courts.

[7] The complaint also listed two of Vitol's insurers, Carlos Benítez, Inc., and Fidelity & Deposit Company of Maryland, as defendants, but they are no longer parties to this case.

-8-

After various developments not relevant here, on March 15, 2016, the district court issued an order remanding the case to the Commonwealth Court. The district court reasoned that the forum selection clauses applied to the dispute and bound Vitol, Inc., who could therefore not consent to a co-defendant's removal. The unanimity requirement thus could not be satisfied, and the case had to be remanded. See 28 U.S.C. § 1447(d). We agree.

## II. Discussion

It is dubitable whether we have jurisdiction to hear this appeal. A remand order that is based on a breach of the unanimity requirement is not appealable pursuant to 28 U.S.C. § 1447(d). Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009). However, "§ 1447(d) is not a bar to review of a remand order based on a forum-selection clause." Autoridad de Energía Eléctrica de P.R. v. Ericsson Inc., 201 F.3d 15, 17 (1st Cir. 2000). This raises the question whether a remand order based on a lack of unanimity due to a forum selection clause is reviewable. Such a remand order may not be appealable as long as the district court colorably characterizes the remand order as based on a lack of unanimity. See Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 234 (2007) ("[R]eview of the District Court's characterization of its remand as resting upon lack of subject-matter jurisdiction, to the extent it is permissible at

-9-

all, should be limited to confirming that that characterization was colorable . . . .").

We need not decide, however, whether we have jurisdiction to hear the present appeal. "The rule is well established in this Circuit that resolution of a complex jurisdictional issue may be avoided when the merits can easily be resolved in favor of the party challenging jurisdiction." Cozza v. Network Assocs., Inc., 362 F.3d 12, 15 (1st Cir. 2004). Because we find no difficulty in holding that the forum selection clauses are enforceable, and the unanimity requirement is consequently not satisfied, we bypass the jurisdictional issue and proceed to the merits.

Determining whether a forum selection clause is enforceable involves three steps. "Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 (1st Cir. 2014) (quoting Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009)). "Permissive forum selection clauses . . . authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere . . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively

in the designated forum."  Id. (alterations in original) (quoting

Rivera, 575 F.3d at 17).  Next, we ascertain the clause's scope to

determine whether it encompasses the claims -- an analysis that is

"clause-specific," id., meaning that "it is the language of the

forum selection clause itself that determines which claims fall

within its scope."  Id. (quoting Rivera, 575 F.3d at 19).  If we

find that the clause encompasses the claims, the final step is to

determine whether "a strong showing" has been made that the clause

should not be enforced because:

> (1) the clause is the product of fraud or
> overreaching; (2) enforcement is unreasonable and
> unjust; (3) its enforcement would render the
> proceedings gravely difficult and inconvenient to the
> point of practical impossibility; or (4) enforcement
> contravenes "a strong public policy of the forum in
> which suit is brought, whether declared by statute or
> judicial decision."

Carter's of New Bedford, Inc. v. Nike, Inc., 790 F.3d 289, 292

(1st Cir. 2015) (quoting Huffington v. T.C. Group, LLC, 637 F.3d

18, 23 (1st Cir. 2011)).

Here, the forum selection clauses are plainly mandatory,

because they contain the following language: "the contracting

parties expressly agree that only the state courts of Puerto Rico

will be the courts of competent and exclusive jurisdiction to

decide over the judicial controversies that the appearing parties

may have among them . . . ."  (Emphasis added).  See, e.g., Summit

-11-

Packaging Sys., Inc. v. Kenyon & Kenyon, 273 F.3d 9, 13 (1st Cir. 2001) ("[W]hen parties agree that they 'will submit' their dispute to a specified forum, they do so to the exclusion of all other forums"); Rivera, 575 F.3d at 17 n.5 ("'[T]ypical mandatory terms' [include] 'shall,' 'exclusive,' 'only,' or 'must' . . . .").

The forum selection clauses also encompass the claims at issue. Vitol seeks to persuade us that PREPA is bringing statutory (rather than contractual) claims, and that these claims thus are not ones "regarding the terms and conditions of this Contract." Even if we assume, favorably to Vitol, that PREPA's claims are indeed statutory in nature, they still fall under the forum selection clauses. In Huffington, this court held that a forum selection clause that used the phrase "with respect to" encompassed "statutory and common-law tort claims [that] rest on alleged misrepresentations that occurred before [the signing of] the agreement," because "a suit is 'with respect to' the agreement if the suit is related to that agreement -- at least if the relationship seems pertinent in the particular context." 637 F.3d at 21-22. This court noted that "the phrase 'with respect to' [is] synonymous with the phrase 'with reference or regard to something.'" Id. at 22 (emphasis added). Because we see no difference between "with regard to" and "regarding," the forum selection clauses in the present case encompasses statutory

claims.   The statutory claims here also plainly relate to the agreements at issue -- for PREPA would have no claim against Vitol if it had not been for the contracts.

Although Vitol may be correct that the words "terms and conditions of this Contract" narrow the forum selection clauses at issue (as compared with clauses regarding "the contract"), PREPA's claims here plainly do regard the "terms and conditions of this Contract."   As noted above, the contracts contained "Sworn Statement" clauses that specifically referenced Law 458; the sworn statements Vitol provided also specifically referenced Law 458, and were indeed required by Law 458.  Supra at 5.  Pursuant to Law 458, the contracts also contained de jure penal clauses that lay out the consequences Law 458 imposes for having been convicted, or having pled guilty to, a crime listed in Law 458.  Supra at 6.  In addition, the contracts contained "Contingent Fees" clauses, which required Vitol to certify that it was not "barred from contracting with agencies or instrumentalities of the Commonwealth of Puerto Rico."  Supra at 6.  PREPA alleges that, due to Law 458, Vitol was barred from exactly that.  "Code of Ethics" clauses were also to be found in the contracts, and required Vitol to disclose such matters as guilty pleas to crimes listed in Law 458.  Supra at 7. Thus, a statutory claim based on Law 458 is also a claim regarding the terms and conditions of the contracts at issue.

-13-

At the third and final step of the analysis of the forum selection clauses, Vitol seeks to convince us that it has made the requisite strong showing that enforcement of the clauses would be unreasonable and unjust because PREPA takes seemingly inconsistent positions by seeking enforcement of forum selection clauses while arguing that the contracts containing those clauses are void ab initio. Vitol also argues that equitable estoppel precludes PREPA from maintaining these positions. See InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003) (explaining that equitable estoppel "precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations"). Vitol fails to cite even a single case in which enforcement of a forum selection clause was denied because it would be unreasonable and unjust, or precluded by equitable estoppel. In disposing of similar arguments, one of our sister circuits showed the absurdity of the position Vitol is taking:

> Appellants also spend a good deal of time trying to convince us that because the contracts themselves are void and unenforceable . . . the forum selection clauses are also void. The logical conclusion of the argument would be that the federal courts . . . would first have to determine whether the contracts were void before they could decide whether, based on the forum selection clauses, they should be considering the cases at all. An absurdity would arise if the [federal] courts . . . determined the contracts were not void and that therefore, based on valid forum selection clauses, the cases should be sent to [the

-14-

state court] — for what?  A determination as to whether the contracts are void?

_Muzumdar_ v. _Wellness Int'l Network, Ltd._, 438 F.3d 759, 762 (7th Cir. 2006).

Vitol tries to remedy its failure to cite any precedent involving forum selection clauses by instead citing precedents involving arbitration clauses.  Even if we assume, for the sake of argument, that these precedents can be extended to apply to forum selection clauses, they do not help Vitol here.[8]  The Supreme Court has made clear that the three cases Vitol seeks to rely on do not apply, where, as here, the contracts were entered into, but are later argued to have been invalid:

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded.  Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents . . . which hold that it is for courts to decide whether the alleged obligor ever signed the contract, _Chastain_ v. _Robinson–Humphrey Co._, 957 F.2d 851 ([11th Cir.] 1992), whether the signor lacked authority to commit the alleged principal, _Sandvik AB_ v. _Advent Int'l Corp._, 220 F.3d 99 ([3rd Cir.] 2000); _Sphere Drake Ins. Ltd._ v. _All American Ins. Co._, 256 F.3d 587 ([7th Cir.] 2001), and whether the signor lacked

---

[8]  While the Supreme Court's statement that "[a]n agreement to arbitrate . . . is, in effect, a specialized kind of forum-selection clause" could be read to mean that precedent about forum selection clauses also applies to arbitration clauses, the inverse need not be true.  _Scherk_ v. _Alberto-Culver Co._, 417 U.S. 506, 519 (1974).

-15-

the mental capacity to assent, Spahr v. Secco, 330 F.3d 1266 ([10th Cir.] 2003).

Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n.1 (2006). The Supreme Court, making clear that it did not matter whether a contract was void or voidable, held that a challenge to the validity of the contract must be resolved by an arbitrator. Id. at 446, 449. The challenge at issue was that "a contract containing an arbitration provision [was] void for illegality." Id. at 442. To the extent that arbitration precedents apply to the present case, then, they do not favor Vitol -- quite the contrary, they imply that the forum selection clauses are enforceable even if PREPA argues that the contracts are void.

### III. Conclusion

The district court correctly decided that the forum selection clauses were enforceable. Therefore, the unanimity requirement could not be met here, and remand was proper.[9]

**Affirmed.**

---

[9] We have considered Vitol's remaining arguments, and deem them to be without merit, at least insofar as they apply to the remand issue before us.