# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3276

_____

In re: Union Electric Company, doing business as Ameren UE

*Petitioner*

------------------------------

Energy Insurance Mutual Limited

*Respondent*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 12, 2015
Filed: May 29, 2015

_____

Before SMITH, MELLOY, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Energy Insurance Mutual Limited ("EIM") moved to transfer the present dispute over insurance coverage to the United States District Court for the Southern District of New York, citing a contractual forum-selection clause and 28 U.S.C.

§ 1404(a). The district court[1] granted the motion. Union Electric then filed a petition with our Court seeking a writ of prohibition or mandamus to prevent the transfer. Because Union Electric has not satisfied the burden of showing an entitlement to this extraordinary form of relief, we deny the petition.

I.

We set forth the early history of this case and the underlying facts in a prior opinion. Union Elec. Co. v. Energy Ins. Mut. Ltd., 689 F.3d 968, 969–70 (8th Cir. 2012). We recap those facts here and describe additional developments.

Union Electric is a power company, and EIM is a trade-association-owned excess carrier for power companies. Union Electric, as a member of the trade association, is a partial owner of EIM. Union Electric is also the named insured in a $100 million excess liability policy issued by EIM.

It is undisputed that Union Electric and other similarly situated power companies drafted the general form policy upon which the present policy is based. It also is undisputed that Union Electric negotiated the specific terms of the present policy with EIM. Suffice it to say, we view Union Electric and EIM as sophisticated parties regarding the acts of drafting, negotiating, and entering into the present insurance policy.

Union Electric's policy included a requirement that, in the event of a coverage dispute, the parties must progress sequentially through several steps of dispute resolution. The steps required a mini-trial, followed by arbitration, and finally, for any remaining dispute to be handled by suit filed in the United States District Court

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

for the Southern District of New York.  The forum-selection clause naming New York was exclusive in its designation of a forum court and not merely permissive. A choice-of-law provision in the policy specified that New York law was to apply.

The present dispute arose after a catastrophic failure of a Union Electric reservoir in Missouri caused extensive damage to surrounding properties.  Union Electric paid substantial sums to settle damage claims, and EIM paid out $68 million of the policy's $100 million limit.  Union Electric then filed this suit in the United States District Court for the Eastern District of Missouri seeking the remaining $32 million.  Union Election also seeks damages for breach of contract and vexatious refusal to pay.

EIM moved for dismissal under Rule 12(b)(6), arguing that Union Electric failed to state a claim due to a failure to pursue the mini-trial.  EIM also moved for dismissal under Rules 12(b)(3) and 12(b)(6) seeking to enforce the forum-selection clause.  The district court granted the motion to dismiss based on the forum-selection clause, applying M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972).

Union Electric appealed, arguing that the district court should not have applied Bremen and that, even if Bremen applied, the district court failed to consider whether the forum-selection clause was invalid or unenforceable as a matter of Missouri public policy.  Union Electric argued specifically that Missouri had a public policy against the arbitration of insurance disputes and that this public policy invalidated forum-selection clauses that would send insurance disputes to forums where arbitration was likely to be enforced.  We reversed and remanded.  Union Elec., 689 F.3d at  974–75.

In doing so, we addressed at length the standard to apply when analyzing a forum-selection clause under a motion to dismiss, as contrasted with a motion to transfer under § 1404(a).  Id. at 971–73.  We held, "a district court sitting in diversity

jurisdiction and applying federal law must apply the standard articulated in <u>Bremen</u> to the question of whether to enforce a forum selection clause through dismissal." <u>Id.</u> at 973.[2] We also held, however, that the district court erred by failing to address the public policy argument as a relevant factor under <u>Bremen</u>. <u>Id.</u> at 974. We did not view the public policy argument as being sufficiently clear to allow us to address it in the first instance on appeal. <u>Id.</u> at 974 n.4. As such, we remanded for the district court to address the issue. <u>Id.</u> at 975. We did not address the mini-trial issue, holding instead that the district court should address the relationship between the mini-trial requirement, the arbitration provision, and the public policy argument.

On remand, the district court denied the motion to dismiss. The court quoted <u>Bremen</u> for the proposition that, "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." <u>Bremen</u>, 407 U.S. at 15. The district court noted that arbitration agreements in insurance contracts are unenforceable under Missouri law and that the Missouri Court of Appeals has held contractual choice-of-law provisions unenforceable if such provisions would allow enforcement of an insurance-policy arbitration agreement. <u>See</u> Mo. Rev. Stat. § 435.350 ("A written agreement to submit any existing controversy to arbitration or a provision in a written contract, except contracts of insurance and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."); <u>Sturgeon v. Allied Prof'ls Ins. Co.</u>, 344 S.W.3d 205, 210 (Mo. Ct. App. 2011). The

---

[2]The district court did not indicate whether the dismissal was under Rule 12(b)(3) or 12(b)(6). We similarly did not distinguish between the rules, stating, "We need not decide which subsection of Rule 12—either 12(b)(3) or 12(b)(6)—is the appropriate vehicle for dismissal based on a contractual forum selection clause, as EIM moved under both subsections before the district court." <u>Union Elec.</u>, 689 F.3d at 971 n.2.

district court concluded that because the forum-selection clause at issue would result in enforcement of the arbitration agreement, the forum selection clause was invalid.

After the district court denied the motion to dismiss, however, the Supreme Court issued a unanimous opinion in a different case strongly supporting the enforcement of contractual forum-selection clauses "[i]n all but the most unusual cases." Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex., 134 S. Ct. 568, 583 (2013). The Supreme Court carefully distinguished between forum-based challenges under 28 U.S.C. § 1404(a), on the one hand, and venue-based challenges under Rule 12(b)(3) and 28 U.S.C. § 1406, on the other. Id. at 577–79. The Court concluded that a forum-selection clause could not factor into an analysis under Rule 12(b)(3) or § 1406 because those two sources of authority applied where the venue itself, and not merely the forum, was improper. Id. at 577. According to the Court, the terms "forum" and "venue" must be treated as distinct in this context; forum is a more general term whereas venue is a technical term as defined in 28 U.S.C. § 1391(b). Id. at 577–78. Given this distinction, the propriety of venue in a given court is to be determined "exclusively" as a matter of statutory interpretation. Id. at 577 ("Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause.").

The Court also articulated a bifurcated system of analysis for forum-based motions to transfer under § 1404(a) depending upon whether a case involved a forum-selection clause. Id. at 581–83. In the absence of a valid forum-selection clause, a traditional, flexible, multi-factored analysis requires consideration of factors such as private and public interests, convenience to parties and witness, and respect for a plaintiff's choice of forum. Faced with a valid contractual forum-selection clause, however, many factors are to be treated as conclusively established by the contract. For example, the Court stated that the forum selection clause means the plaintiff's

choice of a different forum is entitled to "no weight." Id. at 581. And, the "private-interest factors . . . weigh entirely in favor" of the contractual forum. Id. at 582.

Although the Court in Atlantic Marine resolved several questions, it left other questions unanswered. For example, the Court assumed the existence of a valid forum-selection clause for the purpose of its analysis, thereby providing no direct holding as to when such clauses should be deemed invalid. Id. at 581 n.5. Further, although the Court clearly eliminated the possibility of using Rule 12(b)(3) as a means to enforce a forum-selection clause, the Court expressly declined to address the propriety of enforcing forum-selection clauses through motions to dismiss under Rule 12(b)(6). Id. at 580.[3]

Relying on Atlantic Marine, EIM renewed its efforts to enforce the forum-selection clause. EIM moved for a transfer pursuant to 28 U.S.C. § 1404(a), stating via affidavit that it would not seek enforcement of the insurance policy's arbitration provision. Union Electric resisted, arguing that the motion to transfer and the concession as to arbitration were untimely. EIM also argued that Atlantic Marine did not disturb the district court's earlier determination that the insurance policy's forum-selection clause was invalid as contrary to Missouri public policy.

The district court rejected Union Electric's arguments. The district court held first that the motion to transfer was not untimely because, "[d]ue to the parties' extensive litigation regarding the proper forum, the case remains at an early stage—there has been no discovery nor entry of a scheduling order and defendant has

---

[3]As stated in note 2, supra, we did not resolve in the first appeal whether Rule 12(b)(3) or Rule 12(b)(6) applied. Post-Atlantic Marine, our earlier discussion of Bremen as articulating the standard to apply for enforcement of a forum-selection clause though a motion to dismiss is overruled in the context of Rule 12(b)(3) motion. Atlantic Marine does not consider whether our previous reliance on Bremen survives for the purpose of enforcing a forum-selection clause under Rule 12(b)(6).

not yet filed an answer."  The district court then turned to the merits of the motion to transfer and granted the motion, concluding: (1) it was necessary and permissible to revisit its earlier determination that the forum-selection clause was invalid; (2) the forum-selection clause was not invalid; and (3) the forum-selection clause was enforceable under Atlantic Marine and Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988).

The district court also entered a stay "pending resolution of the appeal, if any, of the transfer order."  The district court did not, however, indicate that it was invoking the procedure of 28 U.S.C. § 1292(b) to open the door to a permissive interlocutory appeal.  Union Electric then filed the present petition seeking a writ of prohibition or mandamus.

II.

The present case involves several potentially challenging issues that touch upon: the power and discretion of a court to revisit a forum challenge in a pending matter; the relationship between a Rule 12(b)(6) motion to dismiss and a § 1404(a) motion to transfer as vehicles to enforce a forum-selection clause; the role of a state's public policies in a § 1404(a) analysis following Atlantic Marine; and the effect of Atlantic Marine on Bremen and Stewart when assessing the validity or enforceability of a forum-selection clause.  We may address such issues only if we have jurisdiction, however, and the grant of a § 1404(a) motion to transfer generally is an unappealable interlocutory order.  See, e.g., Wilkins v. Erickson, 484 F.2d 969, 971 (8th Cir. 1973) ("It is clearly established, both in this circuit and elsewhere, that an order granting or denying a requested transfer under § 1404(a) is interlocutory in nature and not appealable as of right prior to final judgment.").

Notwithstanding this general rule, we have permitted the use of petitions for writs of mandamus or prohibition to review, in a narrow fashion, the propriety of

district court rulings on § 1404(a) motions. See In re Apple, Inc., 602 F.3d 909, 916 (8th Cir. 2010) (per curiam) (reversing a district court's denial of a § 1404(a) transfer motion and stating, "we have recognized that the writ of mandamus is proper, albeit extraordinary, relief for an erroneous ruling on a motion to transfer under § 1404(a)"); McGraw-Edison Co. v. Van Pelt, 350 F.2d 361, 362–63 (8th Cir. 1965) (en banc) (per curiam) (reversing panel precedent and holding a writ of mandamus or prohibition can be a proper vehicle for reviewing a § 1404(a) ruling). And we have elected to treat an otherwise impermissible interlocutory appeal from a § 1404(a) transfer order as a petition for a writ of prohibition or mandamus. See, e.g., Wilkins, 484 F.2d at 971 (construing an appeal from a § 1404(a) ruling as a petition for an extraordinary writ even though it was not fashioned as a petition for a writ and, ultimately, denying the petition).[4]

Such a writ remains an extraordinary form of relief, and our review is narrowly circumscribed. We therefore review the district court's ruling only for "a clear error of law or clear error of judgment leading to a patently erroneous result." In re Apple, 602 F.3d at 911. And "we will issue a writ only where the aggrieved party has no other adequate means to attain the desired relief. . . . We will not, however, disturb a district court's transfer order where 'the facts and circumstances are rationally capable of providing reasons for what the district court has done.'" Id. at 912

---

[4] As a practical matter, there is little distinction between a writ of mandamus and writ of prohibition. In re Jackson Cnty., Mo., 834 F.2d 150, 151 (8th Cir. 1987) ("Whether the writ seeks to prohibit action or to mandate it, the same considerations apply."). They are tools, respectively, to mandate or prohibit an action by a district court. In re Apple, 602 F.3d at 911 ("A writ of mandamus serves as a 'useful safety valve for promptly correcting serious errors[.]'" (quoting Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100 (2009))); Missouri v. U.S. Bankr. Ct. For the E. Dist. of Ark., 647 F.2d 768, 770 n.3 (8th Cir. 1981) ("A writ of prohibition affords an expeditious and effective means of confining an inferior court to a lawful exercise of its prescribed jurisdiction or compelling a court to exercise its authority." (citing Ex Parte Peru, 318 U.S. 578, 583(1943))).

(quoting McGraw-Edison, 350 F.2d at 363). Finally, the issuance of such a writ remains at all times a matter of our discretion. In re Missouri, 664 F.2d 178, 180 (8th Cir. 1981) ("A writ of prohibition may be granted or withheld in our sound discretion, and is usually denied where other adequate remedy is available. . . . The issuance of an extraordinary writ of prohibition should be confined to cases where the applicant has an unquestioned legal right to have the performance of the particular duties sought to be enforced or enjoined . . . .").[5]

Applying this standard to the present case, we find no clear legal error, no clear error of judgment, and no "patently erroneous result." In re Apple, 602 F.3d at 911. Rather, "the facts and circumstances are rationally capable of providing reasons for what the district court has done." Id. at 912.

First, we find no clear error of judgment in the district court's determinations that it could reassess the forum challenge and that the motion to transfer was timely. The suit had not substantially progressed beyond arguments over the correct forum at the time EIM filed its transfer motion. Further, although a round of arguments and an appeal had already taken place based on the earlier motions to dismiss, it was not clear prior to the Supreme Court's opinion in Atlantic Marine that a motion to transfer was required. And the Supreme Court spoke with particular force when emphasizing the importance of contractually negotiated forum-selection clauses. See Atl. Marine,

---

[5]The panel opinion in In re Missouri, issued well after the en banc ruling in McGraw-Edison, arguably set forth an even more demanding standard than articulated by the en banc court. This later panel, when describing the issuance of a writ of prohibition as discretionary, stated, "a writ of prohibition is warranted only if it appears that a miscarriage of justice will result without the issuance of the writ." In re Missouri, 664 F.2d at 180. To the extent this later panel's reference to a miscarriage of justice is inconsistent with McGraw-Edison, we are bound to apply the controlling en banc precedent. In any event, because we conclude a writ is unwarranted in this case even without addressing the question of a miscarriage of justice, we do not further address this possible conflict.

134 S. Ct. at 581 ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. *Only under extraordinary circumstances* unrelated to the convenience of the parties should a § 1404(a) motion be denied." (emphasis added)); id. at 583 ("*In all but the most unusual cases*, therefore, the interest of justice is served by holding parties to their bargain." (emphasis added) (internal quotation marks omitted)). The district court rationally viewed the limited progress of the litigation and the strength of the Supreme Court's opinion as meriting another examination of the forum question.

Second, Union Electric's entire position rests on the argument that Missouri's public policy weighs *strongly* against a transfer in this case. There are several reasons why this argument may be incorrect. This case deals directly with the enforcement of a forum-selection clause and only indirectly with the possible enforcement of an arbitration provision. Missouri has no legislatively expressed policy against forum-selection clauses in insurance contracts, and although the two issues are related, we previously concluded merely that "§ 435.350 . . . *may* . . . constitute a public policy with regard to . . . forum selection clauses." Union Electric, 689 F.3d at 974 n.4 (emphasis added).

Even focusing on the public policy against arbitration of insurance disputes, it is not clear the policy applies to the present parties or that it should merit substantial weight if it does apply. Union Electric and EIM are sophisticated entities who participated in the negotiation of the policy. Union Electric is not a retail purchaser of insurance in need of legislative protection from an insurer with substantially greater bargaining power. Rather, Union Electric is a part-owner of EIM, and of EIM's twelve-member board of directors, ten members are executives from insured utility companies.[6]

---

[6]As noted earlier, further support is provided by the fact that EIM has agreed to waive the arbitration requirement in the New York proceedings.

A review of <u>Atlantic Marine</u> illustrates why "the facts and circumstances are rationally capable of providing reasons for what the district court has done." <u>McGraw-Edison</u>, 350 F.2d at 363.  The Court in <u>Atlantic Marine</u> stated that, when applying § 1404(a) in the presence of a forum-selection clause, questions of convenience to the parties and private interests fall away as having been conclusively determined by the contractual selection of forum.  134 S. Ct. at 581–82.  As a result, "a district court may consider arguments about public-interest factors only."  <u>Id.</u> at 582.  The Court then characterized the filing of suit in a non-designated forum as "flout[ing]," <u>id.</u>, or "defying," <u>id.</u> at 581, the parties' agreement.  And, the Court emphasized that the successful invocation of public interests to defeat a selection clause should be rare:

> Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.  Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," <u>Stewart</u>, 487 U.S. at 30–31, such cases will not be common.

<u>Id.</u> at 582.  Given the strength of the Court's opinion in <u>Atlantic Marine</u> and the reasonable questions surrounding application of Missouri's public policy in this case, we hold that the result reached by the district court was not patently erroneous and the facts and circumstances rationally explain the action taken.

Union Electric's petition for a writ of prohibition is denied.

_____