# United States Court of Appeals
## For the First Circuit

No. 14-1463

CARTER'S OF NEW BEDFORD, INC.,
d/b/a CARTER'S CLOTHING AND FOOTWEAR,

Plaintiff, Appellant,

v.

NIKE, INC., and NIKE USA, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Torruella, and Kayatta,
Circuit Judges.

Philip N. Beauregard, with whom Law Offices of Beauregard, Burke & Franco, was on brief, for appellant.
Nicholas D. Stellakis, with whom Martin F. Gaynor III and Manion Gaynor & Manning LLP, were on brief, for appellees.

June 24, 2015

**TORRUELLA, Circuit Judge**. This case arises out of a contract dispute between Plaintiff-Appellant Carter's of New Bedford, Inc. ("Carter's"), a family-owned retail clothing and footwear business with two stores in Massachusetts, and Defendant-Appellee Nike, Inc. ("Nike"). In an attempt to stop Nike from terminating the parties' business relationship, Carter's filed suit in Massachusetts state court, bringing a host of contractual claims as well as a claim under Mass. Gen. Laws ch. 93A, §§ 2 and 11 ("Chapter 93A"). Nike removed the suit to federal court and then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). According to Nike, its invoices (the "Agreement") included a forum selection clause that regulated the relationship between it and Carter's and required the latter to bring any claim in Oregon, not Massachusetts. The district court agreed with Nike and dismissed Carter's claims. We now affirm that decision.

## I. Background

Carter's has sold Nike footwear for approximately twenty-eight years. Over that period, Nike products have accounted for a substantial portion of Carter's revenue. In March 2013, Nike notified Carter's that it was terminating the parties' business relationship. Carter's theorizes that Nike did so as part of a new marketing strategy that favors large national retailers over small locally-owned businesses. In an attempt to forestall Nike's termination, Carter's sued Nike in Bristol Superior Court alleging

that Nike: (1) breached its Agreement with Carter's; (2) breached the implied covenant of good faith and fair dealing; (3) violated Mass. Gen. Laws ch. 106, § 2-309 (enacting the Uniform Commercial Code ("U.C.C.") in Massachusetts), which provides a default "reasonable time" requirement for terminating agreements of successive performance with indefinite duration; and (4) violated Chapter 93A, which broadly prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade."

Carter's recognized in its Complaint that the parties' business relationship was at least "partially defined" by Nike's invoices and appended a copy of one of these invoices, entitled "Terms and Conditions of Sale," to said Complaint. The document defines itself as "the Agreement" and establishes that "[e]ach Order, together with these Terms and Conditions and, if applicable Customer's credit application and account agreement, may be referred to collectively as the 'Agreement.'" Carter's pleaded "always hav[ing] performed its obligations under such Agreement." While the Agreement includes a clause that states that it "contains the entire agreement and understanding between the parties . . . and supersedes prior and contemporaneous oral and written agreements, commitments and understandings," Carter's Complaint did not explain whether there are any unwritten portions (prior, contemporaneous, or post-Agreement) of the parties' understandings

or how exactly Nike breached those.  Carter's did claim, however, that the business relationship was governed by various instructional materials and guidelines on product advertising, as well as "other customs and procedures . . . that reflect the expectations and arrangements between Nike and Carter's in conducting their business together."  In addition to that, Carter's asserted that it had become a "de facto franchise" of Nike.  Therefore, Carter's argued that terminating the relationship was a breach of the implied covenant of good faith and fair dealing and that such conduct was in violation of Massachusetts law.

Once removed to federal court, Nike moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  According to Nike, a forum selection clause in the Agreement required Carter's to file its claims in Oregon.[1]  Carter's opposed the motion, arguing that the Agreement was unconscionable and an unenforceable contract of adhesion.  In support of that assertion, Carter's claimed that it did not have the opportunity to bargain, and that the Agreement

---

[1]  The relevant provision reads:

> The Agreement, and all disputes arising out of the Agreement or out of the relationship between NIKE and Customer, will be governed by the laws of the state of Oregon. . . .  Customer irrevocably consents to the jurisdiction of the state and federal courts located in the state of Oregon in connection with any action arising out of or in connection with the Agreement and waives any objection that such venue is an inconvenient forum. Customer will not initiate an action against NIKE in any other jurisdiction.  NIKE may bring an action in any forum.

unfairly constrained Carter's possibilities while allowing Nike to litigate in the forum of its choosing. Carter's also argued that Nike had changed the invoice to include the forum selection clause only three years prior to termination, and without notifying Carter's. As proof, Carter's attempted to introduce a pre-amendment copy of the Nike invoice as an exhibit to its memorandum in opposition to Nike's motion to dismiss. Nike moved to strike that exhibit, arguing that district courts are required to confine their 12(b)(6) inquiry to the complaint and the exhibits attached thereto. Carter's never objected to Nike's motion to strike the exhibits, so the district court struck the pre-amendment invoices.

The district court dismissed Carter's Complaint. It noted that Carter's had never alleged that the invoice agreement was unconscionable in its Complaint. In fact, Carter's admitted that the parties' business relationship was partially governed by the Agreement and attached the invoice in the first instance. The district court further noted that while Carter's alleged that the business relationship was also governed by the parties' course of dealing, it never explained what terms such course of dealing created. The district court determined that Carter's did not meet its burden to show that the forum selection clause would deprive Carter's of its day in court. Thus, it granted Nike's motion to dismiss. Carter's appeal ensued.

## II. <u>Discussion</u>

This court reviews a district court's grant of a motion to dismiss <u>de novo</u>.  <u>Cook</u> v. <u>Gates</u>, 528 F.3d 42, 48 (1st Cir. 2008).  We "assume the truth of all well-pleaded facts in the complaint and indulge all reasonable inferences that fit the plaintiff's stated theory of liability."  <u>Rivera</u> v. <u>Centro Médico de Turabo, Inc.</u>, 575 F.3d 10, 13 (1st Cir. 2009) (quoting <u>Centro Médico de Turabo, Inc.</u> v. <u>Feliciano de Melecio</u>, 406 F.3d 1, 5 (1st Cir. 2005)) (internal quotation marks and citation omitted).

### A. Carter's Challenge to the Procedural Vehicle

Carter's extensively argues in its brief on appeal that Nike cannot use a motion to dismiss under Rule 12(b)(6) to enforce the forum selection clause.  Carter's brief relies principally on the Supreme Court's recent decision in <u>Atlantic Marine Construction Co.</u> v. <u>United States District Court for the Western District of Texas</u>, 134 S. Ct. 568 (2013).  At oral argument, however, Carter's counsel expressed that Carter's no longer objects to the use of Rule 12(b)(6) by the district court.  Thus, we focus on the merits of the district court's dismissal.[2]

---

[2]  Carter's does maintain, however, a procedural argument that, even if a Rule 12(b)(6) motion were appropriate, the district court should have converted the motion <u>sua sponte</u> into one for partial summary judgment to admit Carter's exhibits with evidence concerning the change in Nike's invoice.  Yet, Carter's never asked the district court to convert the motion into one for summary judgment or requested an evidentiary hearing.  Instead, Carter's argued that the Agreement was an unconscionable and unfair contract of adhesion, and included the exhibits without more.  Arguably,

-6-

## B. Enforcement of Forum Selection and Massachusetts Public Policy

This Court reviews the enforceability of forum selection clauses employing the Bremen factors. Huffington v. T.C. Grp., LLC, 637 F.3d 18, 23 (1st Cir. 2011) (citing Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15-18 (1972)).[3] The burden of proof is on the party opposing the enforcement of the forum selection clause. Claudio-De León, 775 F.3d at 48 (citing Bremen, 407 U.S. at 17

---

Carter's could have also requested leave to amend its Complaint to include the exhibits and establish an alternate theory on the source of its contractual obligations, thereby allowing the district court to consider Carter's arguments and exhibits even under Rule 12(b)(6), or forcing the district court to treat the motion as one for summary judgment under Rule 56. See Rivera, 575 F.3d at 15 (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir.2008)); see also Fed. R. Civ. P. 12(d).

Nike correctly contends that Carter's also could have objected to Nike's motion to strike the exhibits, as it was required to do under the local rules for motion practice. See D. Mass. R. 7.1(b)(2) (requiring that "[a] party opposing a motion, shall file an opposition within 14 days after the motion is served"). Consequently, the district court did not err in failing to convert the motion sua sponte. When "opposing a Rule 12(b)(6) motion, a plaintiff cannot expect a trial court to do his homework for him. Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his claim." McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22-23 (1st Cir. 1991).

[3] Though Carter's does not dispute the applicability of the Bremen analysis, Nike argues for a heightened standard after Atlantic Marine. For the purposes of this case, we will assume the continued applicability of the Bremen analysis to forum selection clauses evaluated under Rule 12(b)(6) since we conclude that the forum selection clause must be enforced even under this analysis. See Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 48-49 (1st Cir. 2014); cf. In re Union Elec. Co., No. 14-3276, 2015 WL 3429462, at *3 n.3 (8th Cir. May 29, 2015).

-7-

(explaining that "the party arguing that a forum selection clause is inapplicable 'bear[s] a heavy burden of proof'"))(alteration in original).  Under <u>Bremen</u>, we enforce the forum selection clause "absent a strong showing that it should be set aside."  <u>Bremen</u>, 407 U.S. at 15.  A strong showing can exist where: (1) the clause is the product of fraud or overreaching; (2) enforcement is unreasonable and unjust; (3) its enforcement would render the proceedings gravely difficult and inconvenient to the point of practical impossibility; or (4) enforcement contravenes "a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision."  <u>Huffington</u>, 637 F.3d at 23 (internal quotation marks omitted).

Only the second, third, and fourth factors are at issue in this appeal.  Related to the second factor, Carter's argues that Nike inconspicuously inserted the forum selection clause in its invoices without bargain.  As to the third factor, Carter's argues that it should not be required to "finance a cross country legal battle against an international financial behemoth" and that it, as well as other family-owned retailers, "would face extreme hardship if forced to go to Oregon."  Finally, with regards to the fourth factor, Carter's asserts that the forum selection clause's enforcement contravenes both federal and Massachusetts public policy.  We now consider Carter's arguments.

## 1.  The Scope of the Forum Selection Clause

As a preliminary matter, Carter's attempts to narrow the scope of the forum selection clause in two respects.  First, Carter's states that Nike unilaterally included the forum selection clause in later invoices, and suggests that the forum selection clause should be limited to issues regarding the goods covered in each of these invoices.  Second, Carter's argues that its Chapter 93A claim falls outside the scope of the forum selection clause.  "[I]t is the language of the forum selection clause itself that determines which claims fall within its scope."  Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 19 (1st Cir. 2009).  In this case, the language of the forum selection clause is unambiguously broad.  The clause, if enforceable, applies to "any action arising out of or in connection with the Agreement."  (Emphasis added).  The clause therefore applies to each of Carter's claims, including the Chapter 93A claim, since each arises out of or in connection with the Agreement and its termination.

As relates to the Chapter 93A claim specifically, Carter's argument that the termination was an unfair business practice is clearly "connect[ed] with" the Agreement.  Carter's citation to Jacobson v. Mailboxes Etc. U.S.A., Inc., 646 N.E.2d 741 (Mass. 1995) is inapposite since that case concerned a pre-contractual Chapter 93A claim, which fell outside the scope of a more narrowly worded forum selection clause.  See id. at 744-46.

Carter's Chapter 93A claim, in contrast, arises from and is clearly connected with the termination of the Agreement itself. <u>See</u>, <u>e.g.</u>, <u>Huffington</u>, 637 F.3d at 22 (1st Cir. 2011) (finding a Chapter 93A claim to be within the scope of a forum selection clause).

To the extent that Carter's is arguing that the unilateral addition of the forum selection clause is not a valid part of its contract, we reject this argument as waived. Carter's has made no developed argument that the forum selection clause is an unenforceable addition under the U.C.C. Rather, this challenge is "presented in a perfunctory and undeveloped manner, and thus, [is] considered waived." <u>Matt</u> v. <u>HSBC Bank USA, N.A.</u>, 783 F.3d 368, 373 (1st Cir. 2015) (citing <u>Rodríguez</u> v. <u>Municipality of San Juan</u>, 659 F.3d 168, 175 (1st Cir. 2011); <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990)).[4]

## 2. It Is Not Impossible For Carter's to Litigate in Oregon

Carter's cites several cases to argue that the forum selection clause should not be enforced because of the hardship caused to a litigant. Carter's first relies on <u>Feeney</u> v. <u>Dell, Inc.</u>, 908 N.E.2d 753 (Mass. 2009). In <u>Feeney</u>, the Massachusetts Supreme Judicial Court found an arbitration clause unenforceable

---

[4] To the extent that Carter's argues that the enforcement of the forum selection clause is unreasonable or unjust because it never bargained for it, we remain unpersuaded. If the unilateral addition is a valid part of the contract, its enforcement in this case is neither unreasonable nor unjust. As described above, we find any argument against its validity to be waived.

-10-

because it contravened Massachusetts public policy favoring class action litigation of Chapter 93A claims.  Id. at 761-62.  We think the case is inapposite since Carter's has not pursued this case as a class action, and thus it does not implicate the policy. Furthermore, the forum selection clause does not preclude class litigation by its own terms and Carter's has not been impeded from bringing a class action claim in Oregon.[5]

Carter's next turns to Karlis v. Tradex Swiss AG, No. 073527BLS1, 2007 WL 2705572 (Mass. Super. Ct. Sept. 7, 2007). In Karlis, the Massachusetts Superior Court ruled that a forum selection clause which would have required plaintiffs to litigate in Switzerland was unenforceable.  Id. at *4.  The Karlis Court further determined that an intervenor would not have had her day in court if said clause was enforced because she was not a sophisticated party and had allegedly lost her life savings in the Tradex investment at issue.  Id.  We find that Karlis is likewise not on point.  While Carter's may not have the resources of Nike, it is still a multi-million dollar company.[6]  Thus, as to the third

---

[5]  Massachusetts has upheld forum selection clauses which include individual Chapter 93A claims.  See, e.g., Cambridge Biotech Corp. v. Pasteur Sanofi Diagnostics, 740 N.E.2d 195, 201-03 & n.7 (Mass. 2000); see also, e.g., Huffington, 637 F.2d at 22.  There is no suggestion in this case that the claim would not be honored in Oregon.  See Jacobson v. Mailboxes Etc. U.S.A., Inc., 646 N.E.2d at 746 n.9.

[6]  This is not to discourage small businesses from raising Carter's argument, but the difficulty for an American company of litigating in Oregon is not the same as that of an individual litigating in

-11-

<u>Bremen</u> factor, we find that instead of being similarly situated to the plaintiff in <u>Karlis</u>, the enforcement of the clause is not unreasonable or unjust to Carter's.

Finally, Carter's resorts to an unreported settlement agreement reached in <u>FTC</u> v. <u>Leasecomm Corp., et al.</u>, No. 03-11034, ECF No. 2 (D. Mass. May 29, 2003) (stipulated final judgment and order).  In that case, the Federal Trade Commission and the Massachusetts Attorney General brought suit against Leasecomm, which used certain forum selection clauses in its agreements with customers.  As part of the settlement agreement, Leasecom agreed to cease attempts to enforce those forum selection provisions.  This settlement agreement is, of course, neither a statute nor a judicial decision.  Thus, even to the extent that it articulates Massachusetts public policy, Carter's does not explain why it does so in a form that is cognizable under <u>Bremen</u>.  Carter's thus fails to persuade this court that enforcement of the forum selection clause would make it practically impossible for it to litigate in Oregon or contravene Massachusetts public policy.

### III. <u>Conclusion</u>

The forum selection clause is valid and enforceable and the present action was properly dismissed.

**<u>AFFIRMED</u>.**

---

Switzerland.