# United States Court of Appeals
## For the First Circuit

No. 25-1304

MICHAEL A. MANZO; MICHAEL K. MANZO; LOUIS V. MANZO; PAUL A.
AUWAERTER, M.D.,

Plaintiffs, Appellants,

v.

SAMUEL WOHLSTADTER; NADINE WOHLSTADTER,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Montecalvo, Lipez, and Kayatta,
Circuit Judges.

Philip M. Giordano, with whom Julian A. Frare, Taylor M.
Gould, and Reed & Giordano, P.A. were on brief, for appellants.

Koushik Bhattacharya, with whom Jeremy Wyeth Schulman and
Schulman Bhattacharya, LLC were on brief, for appellees.

March 24, 2026

**KAYATTA**, **Circuit Judge**.    In this lawsuit alleging securities fraud and unfair business practices, the district court enforced a forum selection clause contained in several promissory notes issued to plaintiffs in exchange for their investments in a business controlled by defendants.   Finding no fault with the district court's decision, we affirm the dismissal of this lawsuit without prejudice.   Our reasoning follows.

## I.

## A.

Defendants sought dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6) based on the forum selection clause at issue.  "[I]t is permissible to 'treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6).'"  Rivera v. Kress Stores of P.R., Inc., 30 F.4th 98, 102 (1st Cir. 2022) (quoting Claudio-de León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 & n.3 (1st Cir. 2014)).  When reviewing the grant of such a motion, we employ our usual standard of review for failure to state a claim.  Id.  That is to say, we take as given the well-pleaded facts alleged in the complaint and "draw all reasonable inferences therefrom" in plaintiffs' favor.  Alston v. Spiegel, 988 F.3d 564, 571 (1st Cir. 2021) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)).

**B.**

Trading on their friendship of many years, defendants Samuel Wohlstadter and Nadine Wohlstadter enticed plaintiffs Michael A. Manzo, Michael K. Manzo, Louis Manzo, and Dr. Paul Auwaerter to invest a large sum of money in Wellstat, a biopharmaceutical company run by defendants. In pitching the investment, defendants failed to disclose that Wellstat was in dire financial shape, was subject to an $82.6 million obligation to a lender, and was actually barred from incurring any further debt. And while defendants claimed plaintiffs' investment would fund a new company -- Wellmond -- that was soon to spin off from Wellstat, that new company was never actually formed, and defendants instead used plaintiffs' funds to pay off some of Wellstat's existing debt.

Plaintiffs' investment took the form of cash paid in return for several promissory notes. The notes doubled down on the deception, affirmatively (and falsely) warranting that:

> [Wellstat] is not in violation or default of any term of [its] certificate of incorporation or bylaws, as applicable, or of any provision of any mortgage, indenture or contract to which it is a party and by which it is bound or of any judgment, decree, order or writ . . . . The execution, delivery and performance of this Note will not result in any violation or be in contact with, or constitute, with or without the passage of time and giving notice, either a default under any term of the Company's certificate of incorporation or bylaws, as applicable, or of

- 3 -

any provision of any mortgage, indenture or contract to which it is a party and by which it is bound.

The notes also falsely recited that Wellstat would be forming Wellmond and that, upon its formation, the notes in question would be replaced with new notes in Wellmond.

Less than two years after plaintiffs' initial investment, Wellstat filed for bankruptcy, rendering the notes essentially worthless.

## II.

Plaintiffs subsequently filed this lawsuit in the U.S. District Court for the District of Massachusetts, alleging violations of federal and state securities laws, violations of Massachusetts consumer-protection law, and common law claims for fraud and negligent misrepresentation.

On defendants' motion, the district court dismissed the suit without prejudice based on a forum selection clause contained in each note. That clause states as follows:

> Consent to Jurisdiction. Each party irrevocably submits to the exclusive jurisdiction of the Delaware Court of Chancery and any state appellate court therefrom within the City of Wilmington and County of New Castle in the State of Delaware (unless the Delaware Court of Chancery shall decide not to accept jurisdiction over a particular matter, in which case any Delaware state or federal court within the City of Wilmington and County of New Castle in the State of Delaware) (such courts, collectively, the "Delaware Courts"), for the purposes of any Proceeding (as defined

- 4 -

below) _arising out of this Note_; provided that a judgment rendered by such court may be enforced in any court having competent jurisdiction.

Pls.' First Am. Compl., Ex. I, at 8 (emphasis added).

### III.

Plaintiffs advance two principal arguments for reversing the district court's decision, which we review de novo. <u>Rivera</u>, 30 F.4th at 102. They argue first that this lawsuit does not "arise out of" the notes and thus is not encompassed by the forum selection clause. Second, they argue that the forum selection clause is unenforceable under Massachusetts law as a matter of public policy. We address each argument in turn.

### A.

The phrase "arising out of" is a familiar one, appearing in many different contexts and giving birth to many different interpretations. <u>See, e.g.</u>, <u>Hamilton</u> v. <u>United Healthcare of La., Inc.</u>, 310 F.3d 385, 391-92 (5th Cir. 2002) (concluding that, in the context of the Fair Debt Collection Practices Act, "arising out of" means "incident to, or having connection with," which is "much broader" than "caused by" (quotation marks omitted)); <u>Brazas Sporting Arms, Inc.</u> v. <u>Am. Empire Surplus Lines Ins. Co.</u>, 220 F.3d 1, 7 (1st Cir. 2000) (construing Massachusetts law and concluding that, in the context of insurance coverage, "arising out of" is an "intermediate causation standard" that "falls somewhere between

- 5 -

proximate and 'but for' causation"); John F. Coyle, Interpreting Forum Selection Clauses, 104 Iowa L. Rev. 1791, 1803-06 (2019) (opining that, in the context of forum selection clauses, the "arising out of" formulation falls somewhere between narrow forum selection clauses that only cover contractual claims and broad forum selection clauses that clearly cover noncontractual claims).

Plaintiffs argue that "arising out of" should be viewed as a narrow formulation, construed to mean "to originate from a specified source" and generally "indicat[ing] a causal connection." Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001) (first quoting Arise, Webster's Third New International Dictionary 117 (1986); and then quoting Am. States Ins. Co. v. Guillermin, 671 N.E.2d 317, 325 (Ohio Ct. App. 1996)). As such, contend plaintiffs, "[a] clause that only covers claims 'arising' out of an agreement [is] generally construed narrowly to reach claims that in fact initiate from the performance, interpretation, or breach of the contract." NRO Bos., LLC v. Yellowstone Cap. LLC, No. 18-cv-10060, 2020 WL 5774947, at *8 (D. Mass. Sep. 28, 2020).

We need not reject plaintiffs' preferred meaning to resolve this appeal. Even if that meaning is accurate -- a holding we do not make -- the complaint in this case still arises out of the notes. Resolving the suit requires interpreting the notes. The complaint describes the suit itself as "aris[ing] under the

Securities Exchange Act," pointing to the notes as the requisite securities. Pls.' First Am. Compl. 8-9. It also alleges that defendants are subject to personal jurisdiction based on their conduct "in connection with the offer, purchase and sale of" the notes. Id. at 9. And the complaint trains repeatedly on statements in the notes as the affirmative misrepresentations giving rise to this lawsuit. See id. at 18 ("Importantly, the 2021 Promissory Note . . . contains a flagrant misrepresentation."); see also, e.g., id. at 34, 40-41. To be actionable, each of plaintiffs' claims requires some form of injury or economic loss[1] -- but plaintiffs fail to identify any injury

---

[1] See ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008) (requiring a plaintiff to plead "economic loss" to state a claim for violation of Section 10(b) of the Securities Exchange Act); Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc., 778 F.3d 228, 246 (1st Cir. 2015) (noting that a claim under Section 20 of the Securities Exchange Act cannot survive when the underlying securities law violation does not); Marram v. Kobrick Offshore Fund, Ltd., 809 N.E.2d 1017, 1025 & n.16 (Mass. 2004) (stating the goal of the Massachusetts Uniform Securities Act is "to compensate the buyer for a loss" by allowing them to recover consideration actually paid for a security plus interest); Mass. Mut. Life Ins. Co. v. Residential Funding Co., 843 F. Supp. 2d 191, 207 (D. Mass. 2012) (noting that a control person claim under Section 410(b) of the Massachusetts Uniform Securities Act requires a primary violation under Section 410(a)); Fordyce v. Town of Hanover, 929 N.E.2d 929, 936 (Mass. 2010) (requiring, as an element of common law fraud, that the plaintiff "rel[ied] on the [defendant's] misrepresentation to his detriment"); Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 918 N.E.2d 36, 48 (Mass. 2009) (requiring, as an element of common law negligent misrepresentation, that the plaintiff "suffered pecuniary loss"); Mass. Gen. Laws ch. 93A, § 9(1) (creating a civil remedy for a person "who has been injured" by another's unlawful practice); cf. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730-31 (1975)

that would have existed without the purchase of the notes.  See id. at 5 (claiming harm amounting to "approximately $1,822,995.44 in total, out-of-pocket damages -- the total amount invested by Plaintiffs in the[] now-defunct Wellstat, including the accrued interest promised by the convertible promissory notes"); see also id. at 41-42, 49, 53-56.  So, too, the remedy sought by plaintiffs is intimately tied to nonperformance of the undertaking in the notes:  They seek recompense for their lost profits and interest, rescission of the notes in exchange for consideration paid plus interest, and "specific performance" -- presumably of the obligations set forth in the notes, which are the only relevant contracts referenced in the complaint.  Id. at 49-50, 56-57.

Plaintiffs argue that defendants' fraud took shape before the notes ever existed, in the form of what counsel at oral argument described as "omissions" or failures to disclose material facts that would have belied the affirmative lies in the notes. But plaintiffs offer no reason why this suit does not arise out of the actual securities sold merely because that sale was preceded

---

(holding a plaintiff has no standing to sue under Section 10(b) of the Securities Exchange Act unless they are an actual purchaser or seller of a security); Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., No. 00751, 2002 WL 31875204, at *32 (Mass. Super. Ct. Dec. 16, 2002) (same under the Massachusetts Uniform Securities Act).

by oral versions of the misrepresentations that appear in the notes and that form the heart of the complaint.[2]

Plaintiffs briefly argue the forum selection clause necessarily cannot apply because their suit is against defendants in their personal capacities, and the notes were signed by defendant Nadine Wohlstadter on behalf of Wellstat, not the defendants personally. But the fact that the parties seeking to enforce the forum selection clause against signatories are themselves nonsignatories is not by itself dispositive. See Aguas Lenders Recovery Grp. v. Suez, S.A., 585 F.3d 696, 701 (2d Cir. 2009) (collecting cases and "find[ing] ample support for the conclusion that the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause"); cf. Machado v. System4 LLC, 28 N.E.3d 401, 408 (Mass. 2015) (listing numerous ways in which a nonsignatory may enforce an arbitration clause against a signatory). We decline to find the clause inapplicable on such a basis when plaintiffs' claims against these defendants so clearly originate from the sale of and the alleged misrepresentations contained in the notes, and

---

[2] Even if some of plaintiffs' claims did not so clearly arise out of the notes, circuit case law suggests they would likely remain subject to the forum selection clause because they involve the same operative facts as claims encompassed by that clause. Cf. Lambert v. Kysar, 983 F.2d 1110, 1121–22 (1st Cir. 1993) ("[C]ontract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.").

when plaintiffs offer no reason or precedent for proceeding otherwise.

We therefore hold that, even under the definition of "arising out of" urged by plaintiffs, this suit arises out of the promissory notes and accordingly falls within the scope of the forum selection clause contained therein.

**B.**

Plaintiffs next argue that, even if the forum selection clause applies to their claims, that clause is unenforceable under Massachusetts's "strong public policy of protecting investors and purchasers of securities." Appellants' Br. 24. But a plaintiff seeking to avoid a forum selection clause on public policy grounds bears a "heavy burden," Huffington v. T.C. Grp., LLC, 637 F.3d 18, 23 (1st Cir. 2011) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17 (1972)), which plaintiffs have not carried here.

Plaintiffs point to not a single case where a Massachusetts court has declined to enforce a forum selection clause based on the public policy they claim bars enforcement here. And as we have previously observed, "Massachusetts securities law claims are not uncommonly brought in other jurisdictions." Id. at 25. Nor do plaintiffs suggest that Delaware courts would refuse to honor their state-law claims. See id. ("Ordinarily, a forum selection clause is respected even if the forum state would substitute its own remedy, so long as the chosen forum will itself

- 10 -

provide an adequate remedy."); see also Carter's of New Bedford, Inc. v. Nike, Inc., 790 F.3d 289, 294 & n.5 (1st Cir. 2015) (rejecting public-policy argument against enforcement of forum selection clause in part because "[t]here is no suggestion in this case that the claim would not be honored" in the selected forum). The only harm plaintiffs identify is the time and expense of litigating out of state, but this falls far short of showing the clause is "unreasonable and unjust" or "so gravely difficult and inconvenient" as to "effectively deprive[] [them] of a meaningful day in court." Bremen, 407 U.S. at 15, 18-19.

We therefore agree with the district court that public policy does not bar enforcement of the forum selection clause.

## IV.

We affirm the district court's dismissal of this case without prejudice.[3]

---

[3] Nothing in this opinion should be read as bearing either way on the merits of the complaint.